**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

John Robert Bellini,

                          Plaintiff,

                  -against-

Martin O'Malley, Commissioner of Social
Security Administration,[1]

                          Defendant,

Social Security Administration,

                        Interested Party.

-----------------------------------------------------------------X

7:22-cv-9639-VR

**<u>OPINION & ORDER</u>**

**VICTORIA REZNIK, United States Magistrate Judge:**

       Plaintiff John Robert Bellini brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a final determination of the Commissioner of Social Security (the Commissioner),

which denied his application for Supplemental Security Income and found he was not disabled.

On November 17, 2022, the parties consented to jurisdiction before a magistrate judge for all

purposes, pursuant to 28 U.S.C. § 636(c).  (ECF No. 12 (Consent)).

       Bellini now moves for judgment on the pleadings under Rule 12(c) of the Federal Rules

of Civil Procedure.  (ECF No. 22 (Mot.), 23 (Mem.).  By Brief, the Commissioner opposes

Bellini's request for review and requests that the Court affirm the Commissioner's decision.

(ECF No. 24 (Br.)).  For the reasons below, Bellini's motion is **GRANTED**, the Commissioner's

request to affirm is **DENIED**, and the action is **REMANDED** for further administrative

---

[1] Martin O'Malley became the Commissioner on December 20, 2023.  He is substituted for the former Acting
Commissioner, Kilolo Kijakazi, under Rule 25(d) of the Federal Rules of Civil Procedure.  The Clerk of Court is
respectfully directed to amend the official caption to conform to the above.

proceedings in accordance with sentence four of 42 U.S.C. § 405(g).[2]

## I.    BACKGROUND

The facts below are taken from the administrative record of the Social Security

Administration, filed by the Commissioner on February 21, 2023.  (ECF Nos. 14, 14-1 to 14-8

(SSA Record)).[3]

### A.    Application History

On September 2, 2020,[4] Bellini applied for Supplemental Security Income, alleging that

he had been disabled since August 20, 2020.  (ECF No. 14 at 211–20).[5]  Bellini's claim was

initially administratively denied on January 6, 2021, and then again after reconsideration on

February 27, 2021.  (*Id.* at 99–103, 110–21).  On March 4, 2021, Bellini requested a hearing

before an Administrative Law Judge (ALJ).  (*Id.* at 124–32).  On June 30, 2021, ALJ Angela

Banks held a telephonic hearing.  (*Id.* at 33–62).  At that hearing, Bellini appeared with counsel

and testified.  (*Id.* at 37, 42–57).  On September 28, 2021, the ALJ issued a written decision, in

which she concluded that Bellini was not disabled within the meaning of the Social Security Act.

(*Id.* at 14–25).  The ALJ reasoned that Bellini maintained a residual functional capacity (RFC) to

perform light work, except that: he can never climb ladders, ropes, or scaffolds; he can

occasionally balance on uneven terrain; he was not limited in balancing on even terrain; he can

occasionally stoop, crouch, crawl, and climb ramps and stairs; he can perform simple, routine,

---

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

[3] The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed.  The Court assumes knowledge of the facts surrounding Bellini's medical history and does not recite them in detail, except as relevant to the analysis set forth in this Opinion and Order.

[4] Some of the SSA filings, including the ALJ's written decision, state that Bellini filed his application on August 20, 2020.  (*See, e.g.*, ECF No. 14 at 14, 64, 79, 81, 98).  But the Application Summary for Supplemental Security Income states that Bellini filed his application on September 2, 2020.  (ECF No. 14 at 211).

[5] All page numbers to documents filed on ECF refer to the pagination generated by ECF on the top right corner of a given page, not the sequential numbering of the SSA Record provided on the bottom right corner of the page.

repetitive tasks; he can perform work in a low-stress job, defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting; he can perform work that is goal-oriented but not production-pace rate work; and he can tolerate occasional contact with coworkers, supervisors, and the public.  (*Id.* at 20–24).  The ALJ relied on a vocational expert's testimony that an individual with Bellini's limitations could perform light work, including the duties of a cleaner, merchandise marker, and a routing clerk.  (*Id.* at 25, 59).  Bellini sought review from the Appeals Council (*id.* at 209–10), who denied his request on September 19, 2022.  (*Id.* at 5–7).  This action followed.  (ECF No. 1 (Compl.)).

**B.      Record Before the ALJ**

Both parties have provided summaries of the testimonial, medical, and vocational evidence contained in the administrative record.  (ECF Nos. 23 at 6–15; 24 at 6–10).  Based on an independent and thorough examination of the record, the Court finds that the parties' summaries of the evidence are largely comprehensive and accurate.  Thus, the Court adopts these summaries and discusses the record in more detail only as necessary to decide the issues raised. *See, e.g.*, *Mathews v. Comm'r of Soc. Sec.*, No. 22-cv-4756, 2023 WL 6289996, at *2 (S.D.N.Y. Sept. 27, 2023).

## II.      <u>LEGAL STANDARDS</u>

**A.      Standard of Review**

This Court "engage[s] in limited review" of the Commissioner's decision.  *Schillo v. Saul*, 31 F.4th 64, 74 (2d Cir. 2022).  The Court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  *Id.*; *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "The substantial evidence standard is a very deferential standard of review," such that it is not the function of the Court "to determine *de novo* whether a plaintiff is disabled."  *Schillo*, 31 F.4th at 74 (internal quotation marks omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  "[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.*  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Id.*  "[O]nce an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (internal quotation marks omitted).

But "where an error of law has been made that might have affected the disposition of the case, this [C]ourt cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration and internal quotation marks omitted).  Thus, "[f]ailure to apply the correct legal standards is grounds for reversal."  *Id.*  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the evidence in the record, the Court may remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *accord Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005).

## B.    Statutory Disability

Under the Social Security Act, a claimant is disabled when the claimant lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); *Schillo*, 31 F.4th at 69–70.  The claimant is eligible for disability benefits

> only if his physical or mental impairment or impairments are of such severity that
> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Regulations, 20 C.F.R. § 404.1520(a)(4)(i)–(v), set forth a five-step

sequential analysis for evaluating whether a person is disabled under the Social Security Act.

*See Schillo*, 31 F.4th at 70.  "If at any step a finding of disability or nondisability can be made,

the Commissioner will not review the claim further."  *Id.* (alteration and internal quotation marks

omitted).  Under the five-step process, the Commissioner determines the following:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe physical or mental impairment, or
> combination of severe impairments;[6]
> (3) whether the impairment (or combination) meets or equals the severity of one
> of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1
> ("Listing of Impairments");[7]
> (4) whether, based on an assessment of the claimant's residual functional
> capacity, the claimant can perform any of her past relevant work;[8] and
> (5) whether the claimant can make an adjustment to other work given the
> claimant's residual functional capacity, age, education, and work experience.[9]

---

[6] A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

[7] Listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations.  20 C.F.R §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).  If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner moves on to step four and must determine the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

[8] A claimant's RFC represents "the most [the claimant] can still do despite [their] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[9] To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, considering his or her RFC and vocational factors, can perform.  20 C.F.R. § 404.1560(c).

*Schillo*, 31 F.4th at 70 (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)).  "At step three, the [Commissioner] determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies."  *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  But "[i]f the claimant's impairment is not on the list, the inquiry proceeds to step four."  *Id.*  "The claimant bears the burden of proof in the first four steps of the sequential inquiry."  *Schillo*, 31 F.4th at 70.  "In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do."  *Id.*  "Because the shift in step five is limited, the Commissioner need not provide additional evidence of the claimant's residual functional capacity."  *Id.* (internal quotation marks omitted).

### III.    THE ALJ'S DECISION

To assess Bellini's disability claim, the ALJ applied the five-step sequential analysis. (ECF No. 14 at 14–25); 20 C.F.R. § 404.1520(a)(4)(i)–(v).  At step one, the ALJ concluded that Bellini had not engaged in substantial gainful activity since August 20, 2020, the alleged onset date.  (ECF No. 14 at 16).  At step two, the ALJ concluded that Bellini had the following severe impairments: degenerative disc disease, learning disorder, borderline intellectual functioning, attention deficit hyperactivity disorder (ADHD), and depressive disorder.  (*Id.*).

At step three, the ALJ determined that Bellini's impairments, individually or combined, did not meet, or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 17–20).  The ALJ found that Bellini's physical impairments did not meet or medically equal Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.18 (abnormality of a major joint(s) in any extremity).  (*Id.* at 17).  The ALJ also found that Bellini's mental impairments did not meet or

medically equal Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related

disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and

12.11 (neurodevelopmental disorders).  (*Id.* at 17–20).

> At step four, the ALJ assessed Bellini's RFC as follows:
>
> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in
> 20 CFR 416.967(b), except the claimant can never climb ladders, ropes, or
> scaffolds.  He can occasionally balance on uneven terrain, but is not limited in
> balancing on even terrain, and he can occasionally stoop, crouch, kneel, crawl and
> climb ramps and stairs.  The claimant can perform simple, routine and repetitive
> tasks.  He can perform work in a low-stress job, defined as occasional decision-
> making, occasional judgment required, and occasional changes in the work
> setting.  The claimant can perform work that is goal-oriented but not production-
> pace rate work.  The claimant can tolerate occasional contact with coworkers,
> supervisors, and the public.

(*Id.* at 20).  In reaching this conclusion, the ALJ "considered all symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence" in accordance with 20 C.F.R. § 416.929 and Social Security Ruling

16-3p.  (*Id.*).  The ALJ also "considered the medical opinion(s) and prior administrative medical

finding(s)" in accordance with 20 C.F.R. § 416.920c.  (*Id.*).  In reaching this determination, the

ALJ used a two-step process.  First, the ALJ found that the evidence revealed medical

impairments that could reasonably be expected to cause the symptoms Bellini had alleged.  (*Id.*

at 21).  Second, the ALJ determined that Bellini's "statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not entirely consistent with the

medical evidence and other evidence in the record."  (*Id.*).

At step five, the ALJ concluded that based on Bellini's age (49 years old), education

(limited), work experience (none), and RFC, there were jobs in significant number in the national

economy that Bellini can perform.  (*Id.* at 24).  The ALJ credited the vocational expert's

testimony that an individual with Bellini's age, education, work experience, and RFC could

perform the duties of a cleaner, merchandise marker, and routing clerk.  (*Id.* at 25).  Thus, Bellini was "not disabled."  (*Id.*).

## IV.   <u>DISCUSSION</u>

Bellini raises a half dozen objections to the ALJ's decision.  He argues that the ALJ erred by: (1) failing to consider Bellini's generalized anxiety disorder and psychogenic formication (in step two);[10] (2) finding that Bellini had only mild limitations in adapting and managing himself when considering the "Paragraph B" criteria of mental impairment listings (in step three);[11] (3) failing to properly consider (in step four) the medical opinions of Dr. Usman Riaz,[12] and PA Derrick Birmingham;[13] (4) determining his RFC without support of substantial evidence (in step four);[14] (5) determining (at step five) that Bellini could perform jobs that required General Educational Development (GED) Math Levels of 1 or 2;[15] and (6) failing to consider (at step five) whether Bellini's potential time off-task and absenteeism would preclude all employment.[16]

As discussed below, at step five, the ALJ failed to adequately consider—both when posing her hypothetical to the vocational expert and in her decision—whether Bellini could perform GED Math Levels 1 and 2.  The ALJ then failed to address in her decision the apparent conflict between (a) Bellini's math abilities, (b) the vocational expert's testimony that Bellini could perform the duties of a cleaner, merchandise marker, and routing clerk, and (c) the GED Math Levels ascribed to these positions by the Dictionary of Occupational Titles (DOT).  Also, at step five, the ALJ failed to consider Bellini's potential absences and failed to reconcile the

---

[10] ECF No. 23 at 24–25.
[11] ECF No. 23 at 22–24.
[12] ECF Nos. 14 at 23 (finding "little persuasive value").
[13] ECF Nos. 14 at 23 (finding PA Birmingham's August 14, 2020, opinion "persuasive" but not his January 25, 2021, opinion); 23 at 16–22.
[14] ECF No. 23 at 26–28.
[15] ECF No. 23 at 28–29.
[16] ECF No. 23 at 29–30.

apparent conflict between (a) the vocational expert's testimony that unscheduled absences of more than one day per month, seven days a year, or one day a month for three months would preclude all work, (b) three medical assessments that Bellini had moderate limitations as to his ability to maintain regular attendance, and (c) two further medical opinions that Bellini would be absent more than three days a month.  Because the ALJ's errors were not harmless, the Court remands and declines to address Bellini's remaining arguments.[17]

A.       **The ALJ Failed to Consider Bellini's Math Abilities.**

Bellini argues that the ALJ improperly found that he could perform jobs that require GED Math Levels of 1 or 2, because the evidence shows that even GED Math Level 1 was beyond his abilities.  (ECF No. 23 at 28–29).  As explained below, the Court agrees that the ALJ failed to adequately consider Bellini's math abilities in step five of her analysis.

First, the ALJ's hypothetical questioning to the vocational expert failed to consider Bellini's limited math abilities.  (*See* ECF No. 14 at 58–61).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and accurately reflect the limitations and capabilities of the claimant involved."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (alteration, citation, and internal quotation marks omitted); *Rivera v. Colvin*, No. 11-cv-7469, 2014 WL 3732317, at *40 (S.D.N.Y. July 28, 2014) ("Provided that the characteristics described in the hypothetical question accurately reflect the limitations and capabilities of the claimant and are based on substantial evidence in the record, the ALJ may then rely on the vocational expert's testimony regarding jobs that could be performed by a

---

[17] *See, e.g.*, *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22-cv-6009, 2023 WL 6240627, at *9 n.10 (S.D.N.Y. Sept. 26, 2023) ("Because the Court remands the matter for further administrative proceedings on this basis, it declines to address the other arguments made by the parties in their motion papers."); *Santos v. Kijakazi*, No. 21-cv-1682, 2022 WL 4354372, at *7–8 (S.D.N.Y. Sept. 20, 2022) (same).

person with those characteristics.").  Here, when the ALJ posed her hypothetical to the

vocational expert, she did not ask the expert to assume any limitations in the ability to perform

math.  (*See* ECF No. 14 at 58–61).  Though the ALJ directed the expert to assume that the

hypothetical individual had the same education and work experience as Bellini (*id.* at 58), that

was insufficient.  The jobs identified by the vocational expert require GED Level 1 or 2 in math

ability.[18]  "Level 1 math requires the following skills: Add and subtract two-digit numbers.

Multiply and divide 10's and 100's by 2, 3, 4, 5.  Perform the four basic arithmetic operations

with coins as part of a dollar.  Perform operations with units such as cup, pint, and quart; inch,

foot, and yard; and ounce and pound."  *Garcia v. Kijakazi*, No. 21-cv-1895, 2022 WL 3442314,

at *15 (S.D.N.Y. Aug. 11, 2022), *report and recommendation adopted*, 2022 WL 3903182

(S.D.N.Y. Aug. 30, 2022).[19]

Nothing in the record shows that Bellini can perform all these basic math skills.  To the

contrary, the evidence shows that Bellini does not have the math skills required for GED Math

Level 1.  For example, Dr. Goldstein—a consultive psychologist whose opinion the ALJ found

persuasive—found that Bellini "was unable to perform simple counting and simple calculations"

and that he "could not complete serial 7s from 100 nor serial 3s from 20."  (ECF No. 14 at 18;

*see* ECF No. 14-1 at 145–46 (Dr. Goldstein's evaluation)).  Though, under "mode of living," Dr.

Goldstein found that Bellini "is able to manage money," under "ability to manage funds," Dr.

Goldstein concluded that Bellini "needs assistance to manage funds due to cognitive deficits."

---

[18] *See Cleaner, Housekeeping*, DICTIONARY OF OCCUPATIONAL TITLES, Code 323.687-014, 1991 WL 672783 (4th ed. 1991) (requiring GED Math Level 1 abilities); *Marker*, DICTIONARY OF OCCUPATIONAL TITLES, Code 209.587-034, 1991 WL 671802 (4th ed. 1991) (requiring GED Math Level 1 abilities); *Routing Clerk*, DICTIONARY OF OCCUPATIONAL TITLES, Code 222.687-022, 1991 WL 672133 (4th ed. 1991) (requiring GED Math Level 2 abilities).

[19] "Mathematical Development, GED level 2 requires the ability to add, subtract, multiply, and divide all units of measure, perform the same four operations with like common and decimal fractions, compute ratios, rate and percent, draw and interpret bar graphs, perform arithmetic operations involving all American monetary units." *Gordon v. Saul*, 410 F. Supp. 3d 553, 561 (W.D.N.Y. 2019).

(ECF No. 14-1 at 146–47).  Dr. Rosarian added that Bellini has problems with adding and

subtracting small numbers and "has difficulty managing his finances," which corroborated Dr.

Goldstein's findings.[20]  (*Id.* at 170–71, 175).  Although Dr. Lieber-Diaz and Dr. Fassler—the two

non-examining reviewing consultants—found that Bellini could manage money, they both also

concluded that Bellini was "[u]nable to complete counting, calcs and serial number tasks."  (ECF

No. 14 at 68, 94).  Further, Bellini's childhood records of learning disability, borderline

intelligence with an IQ of 75, and attendance at a special education program also corroborate

Bellini's lack of GED Math Level 1 skills.[21]  (*See* ECF Nos. 14 at 42 (testifying that he attended

a special education program); 14-1 at 12–22 (childhood records)).  Also, in a function report,

Bellini self-reported that while he could pay bills and count change, he could not handle a

savings account or use a checkbook/money order because of his learning disability.  (ECF No. 14

at 144).  Thus, the ALJ's hypothetical failed to account for or consider Bellini's limited math

skills and its potential effect on the types of jobs he could do.  *See, e.g.*, *De Leon v. Sec'y of

Health & Hum. Servs.*, 734 F.2d 930, 935–36 (2d Cir. 1984) (remanding where the ALJ's

hypothetical questions to the vocational expert did not adequately address the claimant's

impairments).

Second, the ALJ failed to address the apparent conflict between Bellini's math skills; the

vocational expert's testimony that Bellini could perform the requirements of a cleaner,

merchandise marker, and routing clerk; and the GED Math Levels ascribed to these positions by

---

[20] The Court recognizes that, at step four, the ALJ found no persuasive value to Dr. Rosarian's assessment of Bellini's RFC, because it made determinations reserved for the Commissioner.  (ECF No. 14 at 23).  But, considering the absence of evidence that Bellini possessed GED Math Level 1 skills, the Court believes that Dr. Rosarian's underlying observations about Bellini's inability to perform simple math and manage his finances has corroborative value.

[21] The Court recognizes that, at step three, the ALJ observed that there were no objective records substantiating Bellini's childhood records.  (ECF No. 14 at 20).  But, since virtually every doctor observed that Bellini had difficulties performing simple math, Bellini's childhood records have at least some corroborate value as to his math abilities.

the DOT.  (ECF No. 14 at 24–25).  Perhaps the ALJ did not include Bellini's limited math abilities in her hypothetical because she believed, based on the record, that Bellini could in fact perform GED Math Level 1 and 2.  But if that were the case, the ALJ did not explain her reasoning, nor did she address the apparent conflict between such a finding and the medical evidence that Bellini had issues performing simple math.  (*See id.*).  The ALJ has a "duty to identify, explain and resolve apparent conflicts" between the DOT, the vocational expert's testimony, and the claimant's abilities.  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93–94 (2d Cir. 2019) (internal quotation marks omitted); *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (explaining that the ALJ has a duty to develop the administrative record); *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (Summary Order) ("Failure to develop the record warrants remand.").[22]  But here, as noted above, the ALJ failed to do so.  *See, e.g.*, *Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774, at *3 (2d Cir. June 6, 2023) (Summary Order) (remanding "to allow the ALJ to resolve any conflict regarding the reasoning level between the available jobs testified to by the vocational expert and the jobs [claimant] would be able to perform given his residual functional capacity").

The Commissioner argues that Bellini did not establish that he has the functional limitations that preclude him from performing GED Math Level 1.  (ECF No. 24 at 29).  This argument is meritless.  As explained above, there is record evidence that Bellini cannot perform the simple math necessary for GED Math Level 1, which the ALJ never addressed.  (*See* ECF No. 14-1 at 12–22, 145–46, 171, 175).  At a minimum, it was "the ALJ's duty to investigate and develop the facts" as to whether Bellini could do so.  *Butts*, 388 F.3d at 386.

The Commissioner also argues that Bellini reported that he can manage his money, shop,

---

[22] *See also Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999).

take the train, and use food stamps, all of which suggest that Bellini could perform the mathematical requirements of a cleaning job.  (ECF No. 24 at 30).  This argument also lacks merit.  The jobs of a cleaner and a merchandise marker require GED Math Level 1 abilities, which in turn, require the ability to add and subtract two-digit numbers; multiply and divide 10's and 100's by 2, 3, 4, and 5; and perform operations with units such as cup, pint, and quart, among other things.  *Garcia*, 2022 WL 3442314, at *15.  No evidence shows that Bellini could perform these skills.  In fact, Dr. Goldstein found that Bellini "was unable to perform simple counting and simple calculations" and that he "could not complete serial 7s from 100 nor serial 3s from 20."  (ECF No. 14-1 at 145–46).  And Dr. Rosarian observed that Bellini "has problems with . . . [a]dding or subtracting small numbers in your head."  (*Id.* at 171).  Further, Dr. Lieber-Diaz and Dr. Fassler both stated that Bellini was "[u]nable to complete counting, calcs and serial number tasks."  (ECF No. 14 at 68, 94).  Thus, even if Bellini could manage his own money, that would not be enough; GED Math Level 1 requires basic mathematical skills that at least four doctors said Bellini could not perform.  At most, Bellini's purported ability to manage money, shop, take a train, and use food stamps may suggest that Bellini can "perform the four basic arithmetic operations with coins as part of a dollar"—one of the math skills required for GED Math Level 1.  *Garcia*, 2022 WL 3442314, at *15.  But these activities do not address the other requirements of GED Math Level 1, noted above.  *See id.*  The DOT may not be dispensed with absent a "reasonable explanation."  *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 446 (2d Cir. 2012) (per curiam) ("[T]he DOT is so valued that a [vocational expert] whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict.").

The ALJ's failure to adequately address Bellini's math abilities and to resolve the apparent conflict between his math abilities and the requirements to perform the job of a cleaner,

merchandise marker, or routing clerk, warrant remand.  *See Garcia*, 2022 WL 3442314, at *15–16.  Perhaps on remand, even after adequate development and consideration of these parts of the record, the ALJ's conclusion will not change.  But a social security claimant "is always entitled to a decision based on a fully developed record."  *Boswell v. Comm'r of Soc. Sec.*, No. 21-cv-2364, 2022 WL 3714669, at *6 (S.D.N.Y. Aug. 29, 2022).[23]

**B.      The ALJ Failed to Consider Bellini's Potential Absences.**

Bellini also argues that the ALJ failed to consider whether his absenteeism would preclude his ability to work.  (ECF No. 23 at 29–30).  The Court agrees.

The vocational expert testified that unscheduled absences of more than one day per month, seven days a year, or one day a month for three or more consecutive months would preclude all work.  (ECF No. 14 at 60–61).  But the ALJ failed to reconcile the vocational expert's testimony with Bellini's medical evidence of likely absenteeism.  Dr. Goldstein assessed that there was "[m]oderate evidence of limitation sustaining an ordinary routine and regular attendance at work."  (ECF No. 14-1 at 146).  Dr. Lieber-Diaz and Dr. Fassler both assessed that Bellini was "[m]oderately limited" as to the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."  (ECF No. 14 at 73, 92).  Further, Dr. Riaz found that Bellini would be absent from work "daily" (ECF No. 14-1 at 155), and PA Birmingham found that Bellini would be absent from work more than three times a month (*id.* at 166).

Three doctors—Dr. Goldstein, Dr. Lieber-Diaz, and Dr. Fassler—found that Bellini had a moderate limitation in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."  (ECF Nos. 14 at 73, 92; 14-1 at 146).

---

[23] Because the Court remands on the issue of whether Bellini could perform GED level 1 math, the Court declines to reach Bellini's argument that he could not perform reasoning level 2.  (ECF No. 23 at 29 n.14).

"These findings alone are not necessarily enough to cast doubt on [Bellini's] ability to maintain a routine." *Santos v. Kijakazi*, No. 21-cv-1682, 2022 WL 4354372, at *8 (S.D.N.Y. Sept. 20, 2022); *see, e.g.*, *Melisa G. v. Berryhill*, No. 18-cv-508, 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) ("[M]oderate limitations are not prohibitive of performing unskilled work.").  But two other medical professionals—Dr. Riaz and PA Birmingham—also expected that Bellini's impairments would cause him to be absent from work more than three times per month.  (ECF No. 14-1 at 155, 166).  Although the ALJ stated, at step three, that Dr. Goldstein had found that Bellini had a moderate limitation in the ability to sustain an ordinary routine and regular attendance at work (ECF No. 14 at 18), the ALJ did not weigh this finding to determine whether it was supported by, or consistent with, the record.  This is a "significant omission" considering the vocational expert's testimony that Bellini would be unable to maintain the jobs listed if he were to be absent more than once per month.  *See Santos*, 2022 WL 4354372, at *8.  Taking the moderate limitations together, along with Dr. Riaz's and PA Birmingham's opinions of Bellini's potential absences, the ALJ was obligated to address and reconcile them with the vocational expert's testimony."  *Id.*; *see, e.g.*, *Matos v. Comm'r of Soc. Sec.*, No. 20-cv-10686, 2022 WL 3084512, at *8 (S.D.N.Y. June 16, 2022) (explaining that the ALJ should "address the interplay between: (1) the limitations concerning absenteeism, tardiness and being off-task identified by the vocational expert that would preclude employment; and (2) moderate limitations found by [the doctor]"), *report and recommendation adopted*, 2022 WL 3084404 (S.D.N.Y. Aug. 3, 2022).

Relying on *Collado v. Kijakazi*, No. 20-cv-11112, 2022 WL 1960612, at *10 (S.D.N.Y. June 6, 2022), the Commissioner argues that the ALJ need not explicitly address a claimant's monthly absences.  (ECF No. 24 at 28–29).  But *Collado* is distinguishable.  In *Collado*, there

was "substantial evidence in the record to support the conclusion that Collado can maintain regular attendance." *Collado*, 2022 WL 1960612, at *10. And only one doctor found that Collado would be absent more than one day a month—an opinion that was unsupported by medical facts or by the other doctor's assessments. *Id.* Here, five medical sources concluded that Bellini suffered from at least a moderate limitation as to absences, and two medical sources concluded that Bellini would be absent more than three days a month.

The Commissioner also argues that there is substantial evidence in the record that Bellini could maintain regular attendance because: (1) Bellini testified that he attends his methadone program every weekday; (2) he reported taking care of his cats and personal needs daily; and (3) doctors only found moderate limitations in this regard. (ECF No. 24 at 28–29). But Bellini's "situation goes beyond solely having a moderate limitation in [his] ability to maintain attendance or keep to a schedule." *Santos*, 2022 WL 4354372, at *9. Dr. Riaz and PA Birmingham explicitly found that Bellini would be absent more than three times per month. How their opinions jibe with the vocational expert's testimony is an "'interplay' the ALJ 'failed to address.'" *Id.* Bellini also testified that he has a pattern of working for a few months, and then he suffers debilitating pain, causing him to stop working and lose his job. (ECF No. 14 at 44–45). Dr. Goldstein also observed that Bellini would typically "start working and then a few months later, his back will be in tremendous pain and he will have to leave the job." (ECF No. 14-1 at 144). Nor does Bellini's regular attendance at a methadone program amount to substantial evidence that he could maintain regular attendance at work. *See Santos*, 2022 WL 4354372, at *9 n.8 ("Santos' capacity to maintain regular attendance at her medical appointments is not obviously demonstrative of her ability to maintain regular attendance at a job, as the Commissioner suggests it to be."). As the Second Circuit has observed, "relying on

attendance at medical appointments is unhelpful in determining whether an individual with

significant psychiatric issues can consistently show up and successfully function in a work

environment." *Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022).  Similarly, Bellini's ability to

attend to his cats and personal needs does not amount to substantial evidence that he can

maintain regular attendance at work.  *Januchowski v. Comm'r of Soc. Sec.*, No. 18-cv-458, 2019

WL 13219360, at *7 (W.D.N.Y. Aug. 21, 2019) ("[N]or does Plaintiff's ability to care for

children and pets necessarily translate to an ability to complete a normal workweek.").  Indeed,

"in cases of mental disorders, an ability to function in one environment does not necessarily

translate to an ability to function in a work environment." *Id.* (quoting *Piscope v. Colvin*, 201 F.

Supp. 3d 456, 464 (S.D.N.Y. 2016)).

      Upon further review of the record, the ALJ may find Dr. Riaz's and PA Birmingham's

opinions on Bellini's potential absences to be unsupported by the objective medical evidence.

But, as in *Santos*, the ALJ should make an explicit finding and discuss how her finding

corresponds with the vocational expert's testimony.  *Santos*, 2022 WL 4354372, at *10.[24]

### C.      The ALJ's Errors Were Not Harmless.

      The ALJ's failures to adequately address Bellini's math abilities and potential absences

are not harmless.  If the ALJ finds that Bellini could not perform GED Math Level 1, it would

render Bellini unable to obtain any of the jobs identified by the vocational expert, as each job

requires GED Math Level 1 skills or greater.  Similarly, if the ALJ finds that Bellini would be

absent more than one day a month, more than seven days a year, or one day a month for three or

more consecutive months, it would render Bellini unable to obtain any of the jobs identified by

the vocational expert.  Thus, the ALJ should reassess Bellini's math abilities and potential

---

[24] Because the Court remands on the absenteeism issue, the Court declines to reach Bellini's argument that the ALJ failed to consider time off-task.  (*See* ECF No. 23 at 29–30).

absences and make an explicit finding based on the entire record.  *See, e.g.*, *Santos*, 2022 WL 4354372, at *8–10; *Garcia*, 2022 WL 3442314, at *15–16, 21.

<u>**CONCLUSION**</u>

For the reasons above, Bellini's motion is **GRANTED**, the Commissioner's request to affirm is **DENIED**, and the action is **REMANDED** for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is respectfully directed to mark the motion at ECF No. 22 as "granted," the brief at ECF No. 24 as "denied," and enter judgment for Bellini.

Finally, the Clerk of Court is respectfully directed to amend the official caption to conform to the caption reflected on the first page of this Opinion and Order.

**SO ORDERED.**

DATED:        White Plains, New York
                    March 28, 2024

VICTORIA REZNIK
United States Magistrate Judge